## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA , | : | |
| Plaintiff, | : | Case No.  2:22-CR-00066-001 |
| vs. | : | JUDGE EDMUND A. SARGUS, JR. |
| PHELTON WOODS | : | |
| Defendant. | : | |

---

## DEFENSE SENTENCING MEMORANDUM

---

### I.        INTRODUCTION

Phelton Woods is before this Court for sentencing.  He plead guilty to one count of Bank Fraud pursuant to 18 U.S.C. § 1344(2) and has been out on conditions of release since March 23, 2023.

### A. LEGAL STANDARDS

The Court is tasked with imposing "a sentence sufficient, but not greater than necessary." *Gall v. United States,* 128 S. Ct. 586, 596 (2007).   The sentencing guideline range is only "the starting point and the initial benchmark." The Court "may not presume that the Guideline range is reasonable. *Id.* at 596-97. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J.,

concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 595.

### B.  SENTENCING GUIDELINES

Defense has no objections to U.S. Probation's guideline calculations.  The adjusted offense level is 13 and the criminal history is category I for a sentencing guideline range of 12 to 18 months.   However, after the final presentence report was filed, the zero-offender amendment to the sentencing guidelines went into effect and is applicable to Mr. Woods.

Specifically, a defendant is entitled to an additional two-level reduction of his offense level if he scores 0 points for criminal history and his offense does not involve terrorism, violence, death or serious bodily injury, a sex offense, <u>substantial</u> financial hardship, a firearm, offenses involving individual rights, vulnerable victims or an aggravating role.   While Mr. Woods has plead to a financial crime,  there was not substantial financial hardship in this case. *See* §4C1.1

Thus, Mr. Woods' adjusted offense level guideline should be 11 with a criminal history category I for a sentencing guideline of **8 to 14 months.**   The parties have agreed that a sentencing range of **0 to 8 months** is the appropriate range in this case.  *See* ECF 15 (Plea).

Defense requests this Court impose a sentence of 1 day, credit for time served and a term of supervised release.  Should the Court determine additional confinement is necessary, defense would urge the Court to order a term of home confinement as part of the supervised release conditions in lieu of incarceration.

### II.      SENTENCING FACTORS – 18 U.S.C. §3553(a)

"Sentencing is an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has a particular personal history and has committed a

particular crime." *United States v. Harris*, 679 F. 3d 1179, 1183 (9th Cir 2012).   Individualized sentencing is necessary as the principle of sentencing is that "'the punishment should fit the offender not merely the crime'". *Pepper v. U.S.*, 131 S.Ct. 1229, 1240 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

"*Pepper, Booker, Gall and Kimbrough* "empowered district courts, not appellate courts…[and have] breathe[d] life into the authority of district court judges to engage in individualized sentencings." *U.S. v. Whitehead*, 532. F. 3d 991 (9th Cir. 2008); *U.S. v. Vonner*, 516 F. 3d 382, 392 (6th Cir. 2008)(en banc).

"While a sentence within the Guideline range is presumed reasonable, a sentence outside the Guideline range is not presumed unreasonable." *United States v. Houston*, 529 F. 3d 743, 755 (6th Cir. 2008).   In affirming the district court's imposition of probation, the high court addressed that custodial sentences are indeed more severe than probationary sentences but that "offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall v. United States,* 552 U.S. 38, 48, 128 S. Ct. 586, 590, 169 L. Ed. 2d 445 (2007).

Specifically, "[p]robationers may not leave the judicial district, move or change jobs without notifying, and in some cases receiving permission from, their probation office or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking."  USSG § 5B1.3; *Id.* at 48-49.

### A.  History and  characteristics of the defendant: 18 U.S.C. § 3553 (a)(1)

Phelton Woods is 72 years old.   He was born in Lumpkin, Georgia in 1951.  He is the sixth of 11 siblings.  His parents were married and provided a stable and loving home.  The family

3

participated in share cropping and his mother was a chef.  His father worked on an agricultural farm with hogs, pigs and cows.  As Mr. Woods and his siblings got older, they all worked to contribute to the family financially to help provide all the basic necessities for the family.

The Woods moved to Ohio in 1961 when his father found employment with an iron casting mill.  Woods participated in sports once the family moved to Ohio.  He played basketball and football.

Mr. Woods was drafted into the United States Army during the Vietnam War.  He was allowed to change branches and enlisted into the United States Navy.  He was stationed on the U.S.S. Charleston.  He served from 1969 to 1971 before being honorably discharged into the United States Naval Reserve Manpower Center in Bainbridge, Maryland.  His last date of Naval service was on April 24, 1975.

After his discharge from the Navy, Mr. Woods enrolled in Franklin University in Columbus, Ohio.  He had married his childhood sweetheart, Gloria Taylor in 1970. They had two children, Charlotte Woods (age 53) and Phelton Woods, Jr. (age 51).  Phelton and Gloria Woods divorced in 1979.  Mr. Woods was married to Leitha Wright from 1982 to 1988.  He later married Tomita Byrd in 1990 and they subsequently divorced due to irreconcilable differences.  In 2009,  Mr. Woods married Kathie Cunningham.  They have been married for the last fourteen years.

Mr. Woods worked the entirety of his life.  He was employed from 1976 to 1982 as a night auditor for the Harley Hotel in Columbus, Ohio.  He worked for two years as they payroll auditor for Coca Cola.  From 1993 to 1998, he was an industrial inventory manager for Safelite Auto. From 1998 to 203, he was employed through a temporary service.  From 2003 to 2016 he was a bus driver for the Columbus City Schools in Columbus, Ohio.  From 2016 to 2022, he was

4

employed as an inventory control specialist with Mast Logistics Services, Inc.  While retired he also worked for a period of time as a security officer before that job became too physically difficult for him.

Kathie Woods, Mr. Woods' wife gave an interview with U.S. Probation regarding her relationship with Mr. Woods in September 2020.  At the time of this interview, Mr. and Mrs. Woods had been having some difficulties due to the ongoing stress of this situation and these charges.   They have since talked through their difficulties and are no longer considering divorce but are invested in making their marriage work.

In interviewing with Mrs. Woods subsequent to the presentence report,  (PSR 46-48) defense gain further clarification on Mrs. Wood's description of her husband's gambling.   After the Woods pay all of their bills from their limited income, they would give themselves a portion of the remaining amount as their allowance to be spent on miscellaneous things. This allowance can vary every month.   According to Mrs. Woods,  Mr. Woods will buy lottery tickets with his allowance.  She views this as gambling and doesn't approve of spending money on lottery tickets.   She has confirmed that Mr. Woods doesn't go to the casinos or other types of gambling.  He just buys lottery tickets.

Mr. Woods has agreed to pay back $58,385.92 in restitution to Travelers Bond and Specialty and OAPSE.   Mr. Woods is 72 years old and retired.  He and his wife live paycheck to paycheck on social security and a small pension he receives.   Kathie Woods is also retired and receives only a small monthly SSI payment.   Mr. Woods and his wife have had conversations about how to make repayments from their limited income towards this restitution and are trying to determine ways they can save on their daily living expenses.  They have also discussed whether they would move back in with family members and have taken a shorter lease on their

apartment in the meantime. Should Mr. Woods be incarcerated for more than 30 consecutive days his social security benefits will stop until he has been released. Depending on the length of his incarceration, he may need to reapply for benefits.

Numerous factors regarding Mr. Woods point to him being unlikely to recidivate. Specifically, his age of 72 years old; his 46-year work history; his minimal criminal history and prior military service.

### B. Nature and Circumstances of the Offense: 18 U.S.C § 3553 (a)(1)

Mr. Woods volunteered as the treasurer for the Columbus Schools Employee Association (CSEA hereafter) from December 2009 through June 2016. As the treasurer he had been responsible for managing the CSEA's money including receipt and distribution of those funds. As part of belonging to CSEA he traveled and attended various meetings and presentations throughout the state put on by CSEA.

Mr. Woods wrote a total of 375 checks over a period of seven years. 359 of those checks having been determined to be unauthorized to himself. On those checks were notations for expense/mileage, OAPSE convention, convention expense, supplies, convention parking and convention lunch. The total amount misappropriated over the seven years was $58,385.92 minus taking into account a $2,300.00 payment Mr. Woods previously made towards his restitution.

As Mr. Woods explains, he had a mistaken belief that he could write checks for reimbursement of items such as mileage or work-related expenses but realizes that in fact he could not and was fraudulently taken the money and regrets his actions. When Mr. Woods was contacted in 2017 by investigators that they were investigating him for misappropriated funds, he

expressed his desire to repay the money that he had taken. Mr. Woods did make a payment towards his restitution of $2,300.00.

## **CONCLUSION**

Thus, defense respectfully requests this court to impose a sentence of one day with credit for time served and a term of supervised release. The Court could also include a term of electronic home confinement as part of the term of supervised release should further confinement be necessary. This is a sentence that is sufficient, but not greater than necessary as set forth in 18 U.S.C. §3553 (a)(2).

Respectfully submitted,

JOSEPH MEDICI
FEDERAL PUBLIC DEFENDER

    /s/  Stacey MacDonald
Stacey MacDonald (WA #35394)
Assistant Federal Public Defender
Federal Public Defender's Office
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
(614) 469-2999
stacey_macdonald@fd.org

Attorney for Defendant
Phelton Woods

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by

using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users,

and that service will be accomplished by the CM/ECF system.


<u>/s/ Stacey MacDonald</u>
Stacey MacDonald (WA 35394)
Assistant Federal Public Defender

8